United States District Court
Southern District of Texas
ENTERED
June 25, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JOSE ANTONIO PAULIN RAMIREZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00908** |
| | § | |
| **JUAN AGUDELO, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

## ORDER

Pending before the Court is Petitioner Jose Antonio Paulin Ramirez's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the following reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**.

## Background

Petitioner filed his Petition for Writ of Habeas Corpus on May 14, 2026. (Dkt. 1.) Petitioner is a native and citizen of Mexico who has been a Lawful Permanent Resident (LPR) of the United States since December 1, 1990. (Dkt. 1 at 2; Dkt. 9 at 2.) Petitioner has lived in the United States for over 35 years and has a wife, children, and grandchildren who live in the United States. (*See* Dkt. 1 at 2.) On several occasions, Petitioner has left and returned to the United States and has previously renewed his LPR status. (*Id.* at 12–13.) On November 3, 2025, Petitioner applied for admission into the United States near Laredo, Texas. (*Id.* at 10; Dkt. 9 at 2.) Petitioner was returning to the United States after visiting Mexico, where his LPR card had been lost. (Dkt. 1 at

10.) He presented his Mexican voter registration card containing his photo, name, and birth date, as well as a Mexican police report regarding the lost LPR card. (*Id.*; Dkt. 9 at 2.) Petitioner was taken into custody and charged with removability under 8 U.S.C. § 1182(a)(2)(B), section 212(a)(2)(B) of the Immigration and Nationality Act (INA), as a noncitizen convicted of two or more offenses for which the aggregate sentences of confinement were five years or more based on his three prior driving while intoxicated (DWI) convictions. (*Id.* at 11; Dkt. 9 at 2.)

Petitioner has remained in immigration detention since he was taken into custody in November of 2025 and is currently detained at the Rio Grande Detention Center in Laredo, Texas. (Dkt. 1 at 5.) While in custody, he has been experiencing medical complications associated with a prior amputation of his foot, in addition to other medical complications due to his diabetes. (*See id.* at 12.) Petitioner applied for Cancellation of Removal for Certain Permanent Residents under 8 U.S.C. § 1229b(a), section 240A(a) of the INA, and an individual hearing on the merits of his application was scheduled for February 5, 2026. (*Id.* at 13.)

Petitioner informs the Court that his immigration counsel filed a Motion for Continuance on January 28, 2026. (Dkt. 14, Attach. 1.)[1] However, on February 2, 2026, without holding a hearing[2], the Immigration Judge (IJ) denied Petitioner's Motion for Continuance and issued an order pretermitting Petitioner's application for relief and revoking Petitioner's LPR status. (*See* Dkt. 1 at 13; Dkt. 13 at 1–2; Dkt. 14, Attach. 1 at 26–30.) The written order from the IJ stated that "the Court finds [Petitioner] is a person lacking in good moral character . . . . [Petitioner's] blatant

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.
[2] In their advisory, Respondents assert to the Court that "Petitioner did, in fact, receive a hearing on February 2, 2026;" however, despite the Court providing Respondents with an opportunity to supplement their response, they have still failed to provide any evidence to the Court that disputes Petitioner's allegation that no hearing was held on February 2, 2026. (*See* Dkt. 13 at 1.)

and repeated disregard for the laws in the United States, and the repeated danger [Petitioner] has posed to the members of the general public shows that [Petitioner] is a selfish individual with no respect for criminal laws and completely lacks any regard for the consequences of his actions." (Dkt. 1, Attach. 1 at 18; Dkt. 13, Attach. 1.) The IJ's order went on to deny all relief, pretermitting Petitioner's application for Cancellation of Removal, revoking his LPR status, denying voluntary departure "due to [Petitioner's] lack of good moral character and as a matter of discretion," and ordering Petitioner removed to Mexico without hearing any testimony or making any findings on the record regarding evidence submitted by Petitioner. (*See* Dkt. 1, Attach. 1 at 18; Dkt. 13, Attach. 1.) Petitioner has since filed a timely appeal of the IJ's decision to the Board of Immigration Appeals (BIA), arguing that the IJ's failure to conduct a hearing at which Petitioner was provided with an opportunity to be heard violated his constitutional right to due process. (Dkt. 1, Attach. 1 at 20–44.) Petitioner's appeal remains pending, and his order of removal is not yet final. (*Id.* at 13); 8 C.F.R. § 1241.1.

Petitioner filed his petition, (Dkt. 1), on May 14, 2026. As of the date of this Order, Petitioner has remained in immigration detention without an individualized determination of the need for his detention for over seven months since he was apprehended and detained in November of 2025. (*See* Dkt. 1 at 10–11; Dkt. 9 at 2.) In his petition, Petitioner argues that his ongoing and prolonged detention violates his rights under the Due Process Clause of the Fifth Amendment. (Dkt. 1 at 17–25.) He asks the Court to declare that Petitioner's continued detention without any individualized determination violates the Due Process Clause of the Fifth Amendment and to order his immediate release from custody. (*Id.* at 26.)

The Court ordered Respondents to respond to Petitioner's petition on or before May 22, 2026. (Dkt. 4.) Respondents filed a timely response and Motion for Summary Judgment, (Dkt. 9),

arguing that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2) as an applicant for admission "who entered the United States illegally." (Dkt. 9 at 1–2.) Petitioner filed a reply, (Dkt. 11), arguing that Petitioner's prolonged detention violates his constitutional rights and disputing several of Respondents' allegations, including that Petitioner entered unlawfully. (*Id.* at 1–2.) Given the factual disputes, the Court ordered Respondents to submit an advisory addressing the discrepancies identified by Petitioner in his reply and addressing the applicable detention authority. (Dkt. 12.) Respondents filed an advisory maintaining that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "arriving alien" who applied for admission at a port of entry. (Dkt. 13 at 2); *see Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (Section 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings"); 8 C.F.R. § 1001.1(q). Petitioner filed a Reply to Respondents' Advisory. (Dkt. 14.)

**Discussion**

The issue before the Court is whether Petitioner's detention under 8 U.S.C. § 1225(b)(2) for approximately seven months without an individualized determination of the need for detention while his removal proceeding remain ongoing violates his rights under the Due Process Clause of the Fifth Amendment. (*See* Dkt. 1 at 17–25; Dkt. 9 at 2–5; Dkt. 11 at 2–4.) First, the Court considers whether 8 U.S.C. § 1225(b)(2) was the applicable authority for Petition's detention when he was stopped at the border while attempting to reenter the United States. As an LPR, Petitioner would not typically be regarded as "seeking admission," for the purposes of triggering 8 U.S.C. § 1225(b)(2), however, under 8 U.S.C. § 1101(a)(13)(C)(v) a returning LPR may be deemed as seeking admission if he "has committed an offense identified in section 1182(a)(2) of this title" which includes "2 or more offenses . . . for which the aggregate sentences to confinement were 5 years or more." *See* 8 U.S.C. § 1182(a)(2)(B). Petitioner does not dispute that his multiple prior

DWI convictions satisfy § 1182(a)(2)(B), and that he was detained for that reason. (Dkt. 1 at 2.) Given this, the Court finds that DHS's determination that Petitioner was "seeking admission," and therefore subject to detention under § 1225(b)(2), was proper.

Having determined that Petitioner was properly detained at the border pursuant to 8 U.S.C. § 1225(b)(2), the Court turns to Petitioner's claim that his detention under § 1225(b)(2) has become unconstitutionally prolonged. Upon review of Petitioner's case, the Court finds that Petitioner's claim presents similar legal questions to those previously considered by the Court in *Giri v. Lyons*, 2026 WL 1361557 (S.D. Tex. May 12, 2026). In *Giri*, the Court held that the petitioner, a noncitizen detained under 8 U.S.C. § 1225(b) shortly after entering the United States, was entitled to protections under the Due Process Clause of the Fifth Amendment from arbitrary and punitive civil immigration detention. *Giri,* 2026 WL 1361557, at *7–8. Like the petitioner in *Giri*, Petitioner has a right to due process protections, and these protections are particularly robust for permanent resident noncitizens such as Petitioner. *See Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953). Furthermore, in *Giri*, the Court also determined that the appropriate framework to decide whether the petitioner's detention had become unconstitutionally prolonged was the test the Supreme Court set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Here, the Court adopts the same framework to assess Petitioner's prolonged detention and analyzes Petitioner's claims under each *Mathews* factor.

Here, the Court finds that all three *Mathews* factors weigh in favor of granting Petitioner a bond hearing. Under the test set out in *Mathews* the Court evaluates "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using

different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335).

First, Petitioner's private interest is "the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) and *Parham v. J. R.*, 442 U.S. 584, 600 (1979)). Moreover, "[t]he Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987). As this Court has recognized, "a person may obtain a liberty interest through their presence in the country, particularly where that presence is with the express permission of the Government." *Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026); *see Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 793 (S.D. Tex. 2026) (holding that a noncitizen who lived in the United States for over 20 years, at least ten years of which were with the express permission of DHS, has a cognizable liberty interest in the freedom from detention). Thus, Petitioner has a strong private interest in his release from detention because he has lived in the United States for over 35 years with authorization to reside in the country as a permanent resident. (*See* Dkt. 1 at 2; Dkt. 9 at 2.) Furthermore, Petitioner has been detained for over 7 months while his removal proceeding remain ongoing, a period of detention that other courts have found to be unreasonably prolonged and exceeds the six-month period of detention that the Supreme Court found to be presumptively reasonable in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). *See Rashid v. Trump*, 807 F. Supp. 3d 349, 368 (D. Vt. 2025) (collecting cases).

Second, the risk of erroneous deprivation is severe, and the probable value of additional procedural safeguards is great. The Supreme Court has recognized that generally, immigration

detention has "two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Zadvydas*, 533 U.S. at 690; *see Demore v. Kim*, 538 U.S. 510, 518–21 (2003) (noting that detention during pending removal proceedings under 8 U.S.C. § 1226(c) serves these dual purposes); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (generally when making a custody determination, an immigration judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk"). Therefore, if Petitioner is "being detained despite the fact that he is neither a flight risk nor a danger to the community, the Government is erroneously depriving him of his freedom." *See Rashid*, 807 F. Supp. 3d at 369. Petitioner has not received *any* process to consider whether his current detention of over 7 months serves a legitimate purpose. Therefore, the Court finds that the risk of erroneous deprivation weighs in Petitioner's favor.

Finally, the Court finds that the Government's interest in detaining Petitioner without a hearing is minimal. The Court recognizes the Government has a strong interest in ensuring that noncitizens appear for their removal proceedings and in ensuring that the public is kept safe. *See Demore*, 538 U.S. at 518–21. However, additional procedural safeguards in the form of a bond hearing "do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." *See Black v. Decker*, 103 F.4th 133, 153–54 (2d Cir. 2024) (citing 8 U.S.C. § 1226(a)). Indeed, requiring that the Government justify continued detention *promotes* the Government's interest in minimizing the enormous impact of incarceration in cases where it serves no purpose. *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854). Similarly, should the Government find that Petitioner is not a flight risk nor a danger, the

Government benefits from the reduced cost of no longer detaining Petitioner. Finally, there is minimal administrative burden where immigration courts already regularly make custody determinations for noncitizens pending their removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19; 8 C.F.R. § 236.1. For example, in the case of Petitioner, he has lived in the United States since 1990 and has significant equities including a wife, children, and grandchildren who live in the United States. (*See* Dkt. 1 at 2.) Therefore, the Court finds that the final *Mathews* factor also weighs in Petitioner's favor.

Thus, the Court holds that because Petitioner's detention has become unconstitutionally prolonged and violates his rights under the Due Process Clause of the Fifth Amendment, he is entitled to equitable relief. The Court holds that the appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is needed to prevent the noncitizen from fleeing during his removal proceedings or harming the community rather than immediate release. *See Giri*, 2026 WL 1361557, at *13 (citing *Black*, 103 F.4th at 155 and *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213–14 (3d Cir. 2020)).

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Response to the Petition for Writ of Habeas Corpus and Motion for Summary Judgment, (Dkt. 9), is **DENIED**.

1. Respondents are **ORDERED** to provide Petitioner with an individualized custody review before an immigration judge at which the Government bears the burden of proving, by clear and convincing evidence, that Petitioner presents a risk of flight or a danger to the community. At the bond hearing, the Immigration Judge is also directed to consider the availability of alternatives

to detention and conditions of supervision in determining whether Petitioner is a flight risk. Respondents must provide this hearing **within 7 days of the issuance of this Order, or else Respondents must release Petitioner.**

2. Respondents are **ORDERED** to submit a status report informing the Court of the result of the hearing and Petitioner's custody status within **8 days of the issuance of this Order.**

IT IS SO ORDERED.

SIGNED this June 24, 2026.

Diana Saldaña
United States District Judge